UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

SOLOMON, NOEL                                    JURY TRIAL DEMANDED

     Plaintiff

v.

CITY OF DANBURY, SOTOMAYOR, GLENDALIS,
CIEPLY, ERIC, LAVALLE, DARREN, GENTILE,
GISEPPE, MCCRINO, WILLIAM, PACE, THOMAS,
and MEADE, JONATHAN,

     Defendants

## COMPLAINT

### I.    JURISDICTION

1.    This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this action arises under 42 U.S.C. § 1983 and the Fourth and First Amendments to the United States Constitution.

2.    This Court has supplemental jurisdiction over related Connecticut state law claims pursuant to 28 U.S.C. § 1367.

### II.    VENUE

3.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because all events giving rise to these claims occurred within this District.

### III.    PARTIES

4.    Plaintiff Noel Solomon ("Plaintiff") is a citizen of the United States.

1

5.      Defendant City of Danbury ("City") is a municipality organized under the laws of the State of Connecticut and is responsible for the policies, practices, training, and supervision of the Danbury Police Department.

6.      At all relevant times, Defendants Sotomayor, Cieply, LaValle, Gentile, McCrino, Pace, and Meade (collectively, the "Officer Defendants") were sworn police officers employed by the City of Danbury, acting under color of state law and within the scope of their employment. Each is sued in his or her individual capacity.

7.      At all relevant times, all Defendants acted under color of the Constitution, statutes, ordinances, regulations, policies, customs, and usages of the State of Connecticut.

## IV.    STATEMENT OF FACTS

8.      On June 13, 2025, at approximately 9:00 p.m., Plaintiff was traveling on his motorcycle on Interstate 84 between exits 4 and 5 eastbound.

9.      Plaintiff was driving a 2020 bright scorched orange motorcycle as he entered I-84 East from exit 4.

10.     There was no traffic other than a marked Danbury Police Department SUV traveling in the middle lane of I-84 East.

11.     Plaintiff reached 55 mph and remained in the right lane.  At all material times, Plaintiff was safely traveling in the far right lane.

12.     Plaintiff was driving along side the police vehicle when suddenly and without warning or signal, the police SUV drastically cut in front of him, almost causing him to be forced off of the road and crash.

13. The female officer moved into Plaintiff's lane, and appeared to be attempting to use exit 5. She did not activate any emergency lights whatsoever. She never did activate any emergency or safety lights throughout the entire encounter.

14. The sudden movement of the police vehicle moving at it did, caused Plaintiff to temporarily lose control.

15. Plaintiff yelled at and flipped off the female officer who was operating the police SUV. She appeared to return the gesture and directed Plaintiff to pull over by using her hand gestures.

16. Once Plaintiff regained control of ihs motorcycle, he was able to  safely pass the police vehicle on her left.

17. As Plaintiff  passed the police officer, they exchanged words with each other in anger.

18. The female police officer gestured with her hand  for Plaintiff  to exit the highway with her.

19. When gesturing to Plaintiff to exit the highway, the officer failed to turn on any emergency lights and did not make it safe for Plaintiff to stop.

20. Plaintiff followed the police vehicle off of Exit 5 where she then stopped at the stop sign, without making it safe for them.

21. Plaintiff  had to pass the police vehicle and park safely up the street approximately 100 feet from the exit ramp.

22. The police officer apparently called for assistance and waited for a second officer who arrived with emergency lights and sirens activated.

23. Plaintiff remained at his vehicle where he asked for direction.

24. Plaintiff was directed by the second officer to approach the two officers.

3

25.    Plaintiff identified himself as a disabled retired police officer and stated that the female officer had almost killed him.

26.    Plaintiff repeatedly informed them that he was a disabled, retired police office from the White Plains New York Police Department.

27.    The female officer initially repeatedly yelled that she did not see Plaintiff.

28.    She then stated that  Plaintiff had been just driving neck and neck with her.

29.    Plaintiff  then stated that if the officer could not own up to her own mistake, was not going to take responsibility for what she had done, and if she had no questions of him, that he was going home.

30.    The female officer stated "No. You're not going anywhere! "

31.    The male officer stated "No. Let him go". The second officer then stated  "10-2,10-2" over the radio.

32.    Plaintiff was then permitted to leave the scene.

33.    After Plaintiff had proceeded on his way, approximately two right turns away, he was forced to stop, under a bridge, by approximately four (4) police officers in marked police vehicles.

34.    Plaintiff immediately exited his motorcycle and removed his brand new helmet.

35    Several officers ordered Plaintiff to put his hands behind his back as they all rushed him and gang assaulted him.

36.    The officers all acted without engaging in any discussion with Plaintiff, throwing him forcefully to the ground and against a nearby wall.

37.    There was never any reasonable suspicion or probable cause for any alleged crime to justify this action by the multiple Danbury Police Officers.

38.    They pulled Plaintiff's feet out from beneath him where he was forced to the ground and causing injury to his left knee.

39.    During the entire incident, Plaintiff was not resisting in any way and kept reminding them that he was a disabled retired police officer that was even part of 9/11.

40.    The response of the police officers was "Good for you. Congratulations."

41.    As the officers stood Plaintiff up he noticed a nip liquor bottle on the ground.

42.    Plaintiff stated "that's not mine." The officers response was "you mean that nip that just fell out of your pocket."

43.    Plaintiff was shocked that they were willing to plant evidence on him.

44.    The officers conducted a full search of Plaintiff. It was not simply a pat down.

45.    Plaintiff was handcuffed behind his back by the officers and thrown into one of the police vehicles. Plaintiff was told at this time that he was being detained.

46.    Plaintiff believes that he lost consciousness from the heat in the back of the vehicle where he was held for what felt like 30 minutes.

47.    Plaintiff was then let out of the police car by a Sergeant who stated that the female police officer had stated, falsely, that Plaintiff had threatened her.

48.    After an extended period of time in the police car while Plaintiff watched, several officers searched his motorcycle, obviously looking to retrieve the video evidence that he had stated that he had.

49.    After failing to find the video evidence, the Sergeant on scene removed Plaintiff from the police car and removed the handcuffs. They requested that Plaintiff show them his dash cam. Once they realized that the dash camera was not on Plaintiff's motorcycle, they permitted him to go home.

5

50.     At no time during any of the incident did Plaintiff threaten any police officer.

51.     Plaintiff was asked if he wanted to apologize to the female officer. Because he had done nothing to warrant an apology, Plaintiff did not offer one.

52.     The officers then let Plaintiff go.

53.     Once reaching home, Plaintiff telephoned the Danbury Police Department and left a message on their recorded line, requesting that all paperwork, reports and recordings should stay in tact and be preserved.

54.     As a result of this incident, Plaintiff sustained damage to his personal property.

55.     As a result of this incident, Plaintiff has sustained a left elbow effusion; tendinopathy and high grade partial thickness tearing of the left extensor tendon; tearing of the humeral attachment of the central and anterior left radical collateral ligament fibers; mild insertional tendinopathy of the distal left biceps tendon; and right elbow injury.

56.     As a result of this incident, Plaintiff has sustained serious emotional distress including but not limited to fear, anxiety, panic attacks, embarrassment, humiliation, depression, and loss of enjoyment of life.

57.      At no time during the incident did Plaintiff commit any crime in the presence of the Officer Defendants, nor did the Officer Defendants have reasonable suspicion or probable cause to stop, detain, search, or seize Plaintiff.

58.     Plaintiff did not resist, threaten, or attempt to flee from the Officer Defendants at any time.

59.     Defendant officers, including but not limited to Cieply, LaValle, McCrino, Gentile, Pace, and Meade, physically seized Plaintiff, forced him to the ground, and applied handcuffs, while Defendant Sotomayor initiated and/or caused the encounter that led to the seizure.

60.     Plaintiff was handcuffed, placed in a police vehicle, and not free to leave, constituting a seizure without probable cause.

61.     The Officer Defendants conducted a full search of Plaintiff's person without a warrant and without any lawful exception to the warrant requirement.

62.     The actions of the Officer Defendants were objectively unreasonable under clearly established law.

63.     The seizure, force, and search were undertaken, at least in part, in retaliation for Plaintiff's protected expressive conduct toward Defendant Sotomayor.

64.     The Officer Defendants lacked even arguable probable cause for their actions.

**V.     CAUSES OF ACTION**

**COUNT I:     42 U.S.C. § 1983 – FOURTH AMENDMENT EXCESSIVE FORCE** (Against Individual Defendants Cieply, LaValle, McCrino, Gentile, Pace, and Meade)

1–64.   Paragraphs 1-64 are hereby incorporated by reference and made paragraphs 1-64 of this Count One.

65.     Defendants Cieply, LaValle, McCrino, Gentile, Pace, and Meade used objectively unreasonable and excessive force against Plaintiff.

66.    At the time force was used, Plaintiff posed no threat, was not resisting, and was not suspected of any serious crime.

67.    The force used—including forcibly tackling Plaintiff to the ground, restraining him, and handcuffing him—was disproportionate and unreasonable under the circumstances.

68.    The rights violated were clearly established at the time of the conduct.

69.    Plaintiff suffered physical and emotional damages as a result.

**COUNT II:    42 U.S.C. § 1983 – FOURTH AMENDMENT FALSE ARREST / UNLAWFUL SEIZURE** (Against Individual Defendants Sotomayor, Cieply, LaValle, McCrino, Gentile, Pace, and Meade)

1–64.    Paragraphs 1-64 are hereby incorporated by reference and made paragraphs 1-64 of this Count Two.

65.    Defendants seized Plaintiff by Sotomayor, Cieply, LaValle, McCrino, Gentile, Pace, and Meade stopping him, tackling him, physically restraining him, handcuffing him, and placing him in a police vehicle.

66.    Plaintiff was not free to leave and was effectively under arrest or its functional equivalent.

67.    The seizure was made without a warrant, probable cause, or even arguable probable cause.

68.    The seizure therefore violated Plaintiff's clearly established Fourth Amendment rights.

69.    Plaintiff suffered damages as a result.

8

**COUNT III:   42 U.S.C. § 1983 – FOURTH AMENDMENT UNLAWFUL SEARCH**
(Against Individual Defendants Cieply, LaValle, McCrino, Gentile, Pace, and Meade)

1–64.   Paragraphs 1-64 are hereby incorporated by reference and made paragraphs 1-64 of this Count Three.

65.    Defendants Cieply, LaValle, McCrino, Gentile, Pace, and Meade conducted a warrantless search of Plaintiff's person and his vehicle.

66.    The search was not supported by probable cause, reasonable suspicion sufficient to justify its scope, or any valid exception to the warrant requirement.

67.    The search exceeded the permissible scope of any investigative detention.

68.    The search violated clearly established Fourth Amendment rights.

69.    Plaintiff suffered damages as a result.

**COUNT IV:    42 U.S.C. § 1983 – FIRST AMENDMENT RETALIATION** (Against Individual Defendants Sotomayor, Cieply, LaValle, McCrino, Gentile, Pace, and Meade)

1–64.   Paragraphs 1-64 are hereby incorporated by reference and made paragraphs 1-64 of this Count Four.

65.    Plaintiff engaged in protected speech, including expressive conduct directed at Defendant Sotomayor.

66.    Defendants  Sotomayor, Cieply, LaValle, McCrino, Gentile, Pace, and Meade subjected Plaintiff to adverse actions, including seizure, force, and detention.

67.    The adverse actions were motivated, at least in part, by Plaintiff's protected speech.

68.    Defendants' Sotomayor, Cieply, LaValle, McCrino, Gentile, Pace, and Meade conduct would deter a person of ordinary firmness from exercising First Amendment rights.

69.    Plaintiff suffered damages as a result.

**COUNT V:    ASSAULT**  (Against Defendants Cieply, LaValle, McCrino, Gentile, Pace, and Meade)

1–64.  Paragraphs 1-64 are hereby incorporated by reference and made paragraphs 1-64 of this Count Five.

65.    Defendants Cieply, LaValle, McCrino, Gentile, Pace, and Meade intentionally placed Plaintiff in imminent apprehension of harmful or offensive contact.

66.    Plaintiff suffered damages as a result.

**COUNT VI:    BATTERY** (Against Defendants Cieply, LaValle, McCrino, Gentile, Pace, and Meade)

1–64.  Paragraphs 1-64 are hereby incorporated by reference and made paragraphs 1-64 of this Count Six.

65.    Defendants Cieply, LaValle, McCrino, Gentile, Pace, and Meade intentionally caused harmful and offensive physical contact with Plaintiff.

66.    Plaintiff suffered damages as a result.

**COUNT VII:  FABRICATION OF EVIDENCE** (Against Defendants Cieply, LaValle, McCrino, Gentile, Pace, and Meade)

10

1–64.  Paragraphs 1-64 are hereby incorporated by reference and made paragraphs 1-64 of this Count Seven.

65.     Defendants fabricated evidence in support of their unlawful and unconstitutional violation of Plaintiff's rights by planting a nip bottle that was at the scene and contending that it belonged to Plaintiff and by falsely claiming that Plaintiff had threatened them.

66.     Plaintiff suffered damages as a result.

**COUNT VIII: 42 U.S.C. § 1983 – MUNICIPAL LIABILITY (MONELL)** (Against Defendant City of Danbury)

1–64. Paragraphs 1-64 are hereby incorporated by reference and made paragraphs 1-64 of this Count Eight.

65.     The constitutional violations suffered by Plaintiff were caused by policies, customs, and practices of the City of Danbury.

66.     Upon information and belief, the City has failed to adequately train, supervise, and discipline its police officers with respect to the use of force, lawful seizures, searches, and retaliation against protected speech.

67.      The coordinated actions of multiple officers, including the stop, use of force, detention, search, and fabrication of evidence without probable cause, reflect a pattern or practice of unconstitutional conduct that was known to or should have been known to the City.

68.      Supervisory personnel, including a Sergeant present at the scene, were aware of and failed to intervene in or prevent the unconstitutional conduct, thereby ratifying such conduct.

11

69.     The need for proper training and supervision in these areas was obvious, and the City's failure to provide such training constituted deliberate indifference to the constitutional rights of individuals, including Plaintiff.

70.     Upon information and belief, similar incidents involving excessive force, unlawful detention, and retaliatory enforcement by Danbury police officers have occurred and have not resulted in adequate discipline or corrective action, thereby reinforcing and perpetuating such conduct.

71.     As a direct and proximate result of the City's policies, customs, and deliberate indifference, Plaintiff suffered the constitutional violations and damages described herein.

**VI.     REQUEST FOR RELIEF**

WHEREFORE, Plaintiff requests:

(a) A trial by jury on all issues:

(b) Compensatory damages;

(c) Punitive damages;

(d) Attorney's fees and costs pursuant to 42 U.S.C. § 1988;

(e) Such other relief as the Court deems just and proper.

**FOR THE PLAINTIFF**
BY *:/s/Josephine Smalls Miller*
Josephine Smalls Miller, Fed Bar #ct27039
130 Deer Hill Avenue, Unit 13
Danbury, CT. 06810
Tel:  (203) 512-2795
Email: jsmillerlaw@gmail.com

13

<u>CERTIFICATION</u>

This is to certify that the foregoing Complaint was served on May 5, 2026.  All parties

may access this filing through the court CMECF system.


*/s/Josephine Smalls Miller*
Josephine Smalls Miller

13